**Donald T. SHEMWELL and Keith North, Plaintiffs-Appellants,**

**v.**

**Vesta AILSHIRE and Wilber Ailshire, Doing Business as Independence Memorial Airport, Defendants-Respondents.**

No. 24065.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1964.

Arthur J. Kase, Kansas City, for appellants.

Clem W. Fairchild, Thomas J. Daly, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for respondents.

BROADDUS, Presiding Judge.

This is an action for damages for personal injuries brought by Donald T. Shemwell and Keith North in separate actions against Vesta Ailshire and Wilber Ailshire, doing business as Independence Memorial Airport. Both actions by agreement of the parties were consolidated for the purpose of trial on the question of liability only. At the conclusion of plaintiffs' evidence the trial court directed a verdict for defendants and plaintiffs have appealed.

The defendants were the owners of an aircraft which they leased to the plaintiffs.

The plaintiff North was a licensed pilot, having received his license in 1959. On February 23, 1961, plaintiff North accompanied by the plaintiff Shemwell went to the Independence Airport and there made arrangements to hire an airplane from the defendants. The maintenance and cost of fuel were to be taken care of by the defendant Mr. Ailshire and the only thing the plaintiffs were required to do was to fly the plane. Neither plaintiff was a mechanic licensed to make inspections of the aircraft. All inspections were made by the defendants. The aircraft was taken for a test run that day by the plaintiff North in the company of a test pilot furnished by the defendants. It suddenly without warning started to sputter as it reached an altitude of 250 feet and had to return to the ground. The malfunction of the aircraft engine was reported to defendant Mr. Ailshire by the test pilot. On February 25, 1961, the plaintiffs North and Shemwell and a Mr. Martin returned to the Independence Memorial Airport for the purpose of taking the same aircraft that Mr. North had leased to Springfield, Missouri. He was checked again by a test pilot furnished by the defendants. He completed his check ride and was given approval to take the aircraft. The plaintiff North, his passengers, plaintiff Shemwell and Harvey Martin, took off from the Independence Memorial Airport at approximately 8:30 in the morning on their way to Mansfield, Missouri. The aircraft was flown by plaintiff North from Independence to Springfield and no problems were encountered. All proper flying procedures were followed in flight and landing. At Springfield, the aircraft was fueled; gasoline and a quart of oil were added. The gasoline added was the proper octane, and no other inspection or actions were taken in respect to the servicing of the aircraft at Springfield. In flying from Springfield to Mansfield Airport, no difficulties were experienced. The same procedure was followed in flying the aircraft as was used in flying from Independence to Springfield. In making his approach for a landing at Mansfield Airport the

plaintiff North used a power approach, which was the most cautious method of approach. He observed wires immediately ahead of him as he began to land. There was a recommended procedure for the operation of the Lycoming Engine used in this particular aircraft. There were three requirements: The throttle should be open, the fuel mixture kept in full rich position, and the carburetor heat kept in full heat position. The plaintiff followed these instructions as directed by the Lycoming Engine Manual in landing the aircraft. The engine suddenly quit and the propeller came to rest in an upright position visible from the window of the aircraft as it approached the field. The engine lost power and the pilot was unable to maintain altitude so that its undercarriage struck the power line. The aircraft continued forward and rolled to a landing. After traveling a short distance on the ground, the aircraft suddenly halted, pulled backwards and nosed over. The wire from the power lines had become entangled in the nose gear of the plane. There was some damage to the aircraft, but the engine itself was intact. The next time the plaintiff North saw the aircraft engine it was all unassembled, lying on the floor of a garage in Independence, Missouri, at the home of a mechanic, Mr. John Abbots. The aircraft engine was inspected by Mr. William Benjamin, an inspector for The Federal Aviation Agency, at the home of the mechanic, John Abbots, in Independence. No other inspection was made of the engine by the government. When the inspection was made, the engine was found to be disassembled. Because the engine had been disturbed, Mr. Benjamin was unable to determine whether or not there had been a malfunction of the engine. During the inspection Mr. Benjamin determined that a spark plug was used which was not eligible by government specifications for installation in the Lycoming Engine. There was no evidence that defendants either did or had the right to exercise control over the maintenance of the aircraft prior to the accident, or that the defendants in any manner caused the engine to be dismantled after the accident.

Plaintiffs contend that the trial court erred in sustaining defendants' motion for a directed verdict at the close of plaintiffs' evidence for the reason that plaintiffs made a submissible case under the *res ipsa loquitur* doctrine.

In the case of Hutchins v. Southview Golf Club, Inc., Mo.App., 343 S.W.2d 223, 224, this court said:

"One of the necessary elements in a *res ipsa loquitur* case is that the thing causing the injury must be under the control of the defendant at the time of the injury. Maybach v. Falstaff Brewing Corporation et al., 359 Mo. 446, 222 S.W.2d 87; Hall v. Lewis, 364 Mo. 1096, 272 S.W.2d 260, 261. Therefore, if plaintiff's first amended petition does not state facts which show that defendant had control or right of control at the time the injury occurred, the doctrine of *res ipsa loquitur* will not apply."

We quoted the following from the case of Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S.W.2d 87, 90:

"An essential element of the *res ipsa [loquitur]* doctrine is that proof of the occurrence and attendant circumstances shall point, prima facie, to negligence on the part of defendant. Such proof cannot, without further proof, point to the negligence of a defendant who is entirely out of control of the instrumentality at the time it causes the injury. Such proof may tend to indicate negligence on the part of *some one,* but further proof is necessary to definitely fix the blame on the defendant by excluding causes for which he is not responsible."

Both plaintiffs testified that the engine ran smoothly and with no indication on the entire flight from Independence to Springfield and from Springfield to a point somewhere on final leg of the landing approach to Mansfield. This included the run-up

at Independence, three or four touch-and-go landings during the check ride at Independence, take-off at Independence, the flight to and landing at Springfield, the run-up and checking instruments again at Springfield, the take-off at Springfield and the flight to Mansfield. In all, North, had taken off at least five times (at such times the engine is operating under maximum stress), had landed the aircraft four times, and had flown over two hundred miles, only to have the engine without any audible indication of malfunction stop somewhere in the final leg at Mansfield.

Can it be said that from the common experience of mankind, the *occurrence* described would not have happened in the absence of defendants' negligence?

Plaintiff North was a licensed pilot who had flown 140 hours as pilot in command. He was asked on cross-examination: "Q. Well, now, do you have any judgment— you have testified as an expert for Mr. Kase as knowing about engines—do you have any judgment as to just what malfunction occurred on this day? A. No, sir, I don't."

Similarly, the plaintiff, Shemwell, who had flown 600 hours as pilot-in-command, and who had worked on Pratt & Whitney Engines, was asked on cross-examination: "Q. Well, with your mechanical background, working on aviation engines, and with your experience as a pilot, did you determine any cause for this accident that occurred down there? A. No. Q. You have no knowledge of the cause? A. No. None whatsoever. I have thought about it a thousand times?"

If neither of the plaintiffs with their experience with aircraft can determine a possible cause of malfunction, how can they claim that the common experience of mankind would lead a jury to infer malfunction due to negligence?

The facts of the accident are simply explained by plaintiff North's own actions. He came in too low. He had failed to clear out the carburetor to prevent flooding. Then when he needed the power, he tried to get it but the engine flooded and stopped. This explanation is clearly most reasonable. Certainly, plaintiff North cannot claim that he had ruled out all other causes for which defendants are not responsible. Plaintiffs' evidence falls completely short of the requirements laid down in the Maybach case, and especially the element of defendants' control at the time of the accident.

The judgment is affirmed. All concur.